UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CARLOS MARTINEZ JIMENEZ,

    Petitioner,

    v.

MARIA GUADALUPE LOZA LOZANO,

    Respondent.

Case No. C05-5736FDB

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

Petitioner Carlos Martinez Jimenez's Amended Petition for Return of Child was tried before the Court on January 25, 2007. Having heard testimony, examined evidence, considered the arguments advanced by the parties and review of the briefs submitted by each party, the Court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

The Court makes the following findings of fact:[1]

1. Mr. Jimenez and Mrs. Lozano are Mexican citizens and were married on November 13, 1993 in Tlaquepaque, Jalisco, Mexico.

---

[1] Any conclusion of law that is deemed to be a finding of fact is incorporated into this section by reference.

FINDINGS OF FACT
and CONCLUSIONS OF LAW - 1

2. The subject of this petition is their son, known herein as RLJ, who was born in Mexico in 1997. A daughter, born in 1994, died in 1995.

3. During their marriage, Mr. Jimenez and Mrs. Lozano maintained a home in common in Mexico, and Mr. Jimenez carried out his fatherly responsibilities to RLJ, being involved in the decisions regarding RLJ's rearing, welfare, health-care, and education.

4. From his birth, RLJ continuously resided in Mexico until March 13, 2003. He attended school in Mexico for approximately two years.

5. In December 2002, Mr. Jimenez and Mrs. Lozano began to have difficulties in their marriage. Mrs. Lozano threw Mr. Jimenez out of the house several times. When Mr. Jimenez learned that Mrs. Lozano was having an extramarital affair, he went to live at his mother's house a block away from the couple's home.

6. During their separation, Mr. Jimenez continued to see and support RLJ, walking him home from kindergarten every other day, providing 500 pesos every two weeks to support RLJ, and when RLJ cut his finger, taking him to the hospital and paying the bill.

7. On March 13, 2003, Mr. Jimenez arrived home and noticed that Mrs. Lozano and RLJ were missing. After waiting a few hours and then looking, he learned that Mrs. Lozano had left with RLJ and a small suitcase earlier that day.

8. Mr. Jimenez attempted to locate Mrs. Lozano and RLJ since the day they went missing by asking Mrs. Lozano's relatives about her whereabouts, attempting to enlist the aid of certain institutions (government affiliated and social agencies), he placed multiple calls to Mrs. Lozano's parents in the United States to ask for information about his wife and son, but they denied knowing anything about Mrs. Lozano's and RLJ's location.

9. Two months after their disappearance, Mr. Jimenez learned from Mrs. Lozano's sister-in-law's parents that Mrs. Lozano and RLJ were in the United States, in Shelton, Washington. Mr.

Jimenez called Mrs. Lozano's parents in Shelton telling him that he was aware that Mrs. Lozano and RLJ were with them, and he pleaded with them to return to Mexico.

10. Mr. Jimenez never consented to RLJ's removal from Mexico nor his retention outside of Mexico.

11. About a month and a half after Mr. Jimenez contacted Mrs. Lozano and RLJ in the United States, communication was cut off between all of the parties, but Mr. Jimenez continued to place calls to the United States to locate his wife and son, as he did not know their precise location, and he did not have friends or family in the United States to assist him in locating them, while Mrs. Lozano has relatives in both Washington and Oregon.

12. Mr. Jimenez then filed a Hague Convention application for the return of RLJ to Mexico, to the applicable authority in Mexico, who forwarded it to the United States State Department, which serves as the United States Central Authority charged with processing Hague Applications in the United States.

13. Mrs. Lozano and RLJ were located at 2128 Laurel St., Shelton, Washington 98584, on November 11, 2004 by an agency working for the Central Authority.

14. On November 10, 2005, Mr. Jimenez filed his petition to return RLJ to Mexico pursuant to Hague Convention and the International Child Abduction Remedies Act (ICARA) 42 U.S.C. § 11601 in this Court.

15. There is no court order from Mexico that takes away Mr. Jimenez's custody rights over RLJ, his only son.

16. Mrs. Lozano and RLJ do not have the proper documentation to be in the United States.

/////

/////

/////

FINDINGS OF FACT
and CONCLUSIONS OF LAW - 3

# CONCLUSIONS OF LAW

### *Applicable Law Under The Hague Convention*

1. The United States has implemental the Hague Convention through ICARA. 42 U.S.C. § 11601 *et seq.*

2. "The twin objectives of the Convention are (1) to secure the prompt return of children wrongfully removed or retained, and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." *Shalit v. Coppe*, 182 F.3d 1124, 1127 (9th Cir. 1999).

3. "The basic purpose and function of the Convention and ICARA .. are based on the principle that the home country should make the custody determination whenever possible." *Gaudin v. Remis*, 415 F.3d 1028, 1035 (9th Cir. 2005).

4. The United States and Mexico entered into the Hague Convention on October 1, 2991.

5. This Court has jurisdiction to hear Petitioner's claim, 42 U.S.C. § 11603(a), and this Court's jurisdiction is limited to determining the legal sufficiency of Petitioner's wrongful retention claim. *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998). If an ICARA petitioner states a legally sufficient claim, the Court must order a wrongfully-detained child to be delivered to his country of habitual residence, as that country is the proper jurisdiction to determine child custody issues. *Leslie v. Noble*, 377 F. Supp. 2d 1232, 1238 (S.D. Fla. 2005).

6. To establish a *prima facie* case of wrongful removal or retention under the Hague Convention, a petitioner must establish, by a preponderance of evidence (42 U.S.C. § 11603(e)(1)) that (1) the child was "habitually resident" in Mexico immediately before he or she was removed to the United States; (2) that the child's removal was in breach of "rights of custody" of "a person, an institution or any other body; and (3) that those rights "were actually exercised at the time of

FINDINGS OF FACT
and CONCLUSIONS OF LAW - 4

removal or would have been so exercised in the absence of his removal." *Antunez-Fernandes v. Connors-Fernandes*, 259 F. Supp. 2d 800, 810 (N.D. Iowa 2003).

7. If a *prima facie* case is established, the child must be "promptly returned unless one of the [four] narrow exceptions set forth in the Convention applies." 42 U.S.C. § 11601(a)(4); *Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir. 1999). ICARA makes clear that the four exceptions are intended to be narrow. 42 U.S.C.§ 11601(a)(4).

8. The four exceptions, contained in Articles 12, 13, and 20 of the Hague Convention are as follows: (1) Judicial proceedings were not commenced within one year of the child's abduction and the child is now well-settled in his or her new home; (2) the petitioning parent was not actually exercising custody rights at the time of the child's removal or had consented to or subsequently acquiesced in the removal or retention; (3) "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation"; or (4) returning the child would be inconsistent with "fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms." The responding parent bears the burden of proving the latter two exceptions by clear and convincing evidence, 42 U.S.C. § 11603(e)(2)(A); *Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir. 1999), and the first two exceptions must be proved by the responding parent by a preponderance of the evidence. 42 U.S.C. § 11603(e)(2)(B); *Blondin* at 245-46.

### ***Application of The Law to Petitioner's Case***

9. RLJ's habitual residence prior to his wrongful removal was Mexico.

10. Mr. Jimenez's rights of custody of RLJ arise by operation of Mexican law, which, regarding custody rights, arise from Roman law and the civil law concept of *Patria Postedad*. The Jalisco Civil Code defines at Article 578 *Patria Postedas* and at Article 581 establishes that *Patria Postedas* must be exercised for both mother and father.

FINDINGS OF FACT
and CONCLUSIONS OF LAW - 5

11. The removal of RLJ is in violation of the Jalisco Civil Code and is a wrongful removal and wrongful retention within the meaning of Articles 3 and 5 of the Hague Convention.

12. Rights of custody under the concept of *Patria Postedas* can only be taken away by a Mexican court order.  There is no court order from Mexico that takes away Mr. Jimenez's custody rights over RLJ.

13. Mr. Jimenez continually exercised his right to custody over RLJ because of his continual care and contact with RLJ prior to Mrs. Lozano's wrongful retention.

14. RLJ was wrongly removed from Mexico to the United States by Mrs. Lozano.

15. Although Mr. Jimenez filed his Hague Convention petition November 10, 2005, more than a year after Mrs. Lozano wrongfully removed RLJ from Mexico, equitable tolling applies in this case, as Mr. Jimenez did not definitely learn of RLJ's location until November 11, 2004 when an agency working for the Central Authority confirmed RLJ and Mrs. Lozano's location.

16. RLJ is not "settled" in Shelton, Washington.  While RLJ may attend school and has the benefit of being with his mother and close relatives, this perceived stability is undermined by the fact that neither Mrs. Lozano nor RLJ have the proper documentation to reside in the United States. *See In re Cabrera*, 323 F. Supp. 2d 1303, 1314 (S.D. Fla 2004).

17. Respondent has not demonstrated by clear and convincing evidence a grave risk that RLJ's return to Mexico would "expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."  There is no documentation or credible evidence that Mr. Jinenez abused either Mrs. Lozano or RLJ.

18. RLJ has not "attained an age and degree of maturity at which it is appropriate to take account of [his] views."  *See Gaudin v. Remis*, 415 F.3d 1028, 1035 (9th Cir. 2005)("The district court should exercise caution in making [the determination whether a child objects], so as to ensure that statements made by the children reflect their own, considered views and not merely the result of

FINDINGS OF FACT
and CONCLUSIONS OF LAW - 6

having lived for so long with the absconding parent." *Id.* n. 3.) RLJ's testimony is entitled to little weight, as his comments in certain areas were so extreme as to invite the conclusion that he has been greatly influenced by Mrs. Lozano and her family.

19. Mexico is the more appropriate jurisdiction to decide RLJ's custody and plan for parenting and residence. RLJ and Mrs. Lozano are both documented citizens of Mexico, but neither have documentation permitting them to reside in the United States or to travel between the United States and Mexico. A parenting plan, such as that submitted by Mrs. Lozano to the Mason County Superior Court that provides for RLJ to reside with Mr. Jimenez during part of each year, could not be effectuated, as RLJ is not permitted to travel between the United States and Mexico. Mexico is the only jurisdiction that can afford complete relief to both Mr. Jimenez and Mrs. Lozano in a custody determination over RLJ.

20. Mrs. Lozano has presented insufficient evidence on any defense that she has asserted to the return of RLJ to Mexico.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED:

(1) The Petition is GRANTED;

(2) The Court will enter a separate order concerning RLJ's return to Mexico.

(3) Respondent shall not remove RLJ from the Western District of Washington pending RLJ's return to Mexico.

DATED this 14th day of February, 2007.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

FINDINGS OF FACT
and CONCLUSIONS OF LAW - 7